# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

AL GREEN,

                              Plaintiff,

          -vs-

F. DEE GUNN, et al.,

                           Defendants.

06-CV-6248-CJS

DECISION and ORDER

---

## APPEARANCES

For Plaintiff:

Al Green, 91-A-6966, *pro se*
Clinton Correctional Facility
1156 Cook Street, Box 2001
Dannemora, NY 12929-2001

For Defendant:

Gary M. Levine, Esq.
Office of the Attorney General
Rochester Regional Office
Court Exchange Building
144 Exchange Boulevard
Rochester, NY 14614-2176

## INTRODUCTION

**Siragusa, J.** Plaintiff, a prison inmate in the custody of the New York State Department of Correctional Services ("DOCS"), is suing pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment rights by subjecting him to excessive force and by failing to treat his injuries. Now before the Court is a motion for

1

summary judgment by Defendants Corrections Officer Keith R. Braun ("Braun"), Corrections Officer Daniel W. Hatfield ("Hatfield"), Corrections Officer Arthur Turnbull ("Turnbull"), and Nurse Michael Sedar ("Sedar") (Docket # 39). For the reasons that follow, the application is granted in part and denied in part.

## BACKGROUND

On May 17, 2003, Plaintiff Al Green ("Plaintiff") was housed at Wende Correctional Facility ("Wende") in Alden, Erie County, New York. Plaintiff claims that defendant Corrections Officer Deerforrest Gunn ("Gunn") struck him in the head with a baton, and that Gunn and other Corrections Officers then punched and stomped him. (Green Dep. 85: 7-8, March 19, 2008.) Plaintiff claims that Hatfield, Turnbull, and Braun were present but did not stop the assault. (*Id.* 89: 5-25, 90: 2-11, March 19, 2008.)

Plaintiff further alleges that after the assault, Sedar denied him adequate medical care, by failing to administer a sufficiently thorough medical exam, and by downplaying Plaintiff's injuries. (Compl. ¶ 48; Green Dep. 123: 12-13, March 19, 2008.) In that regard, Plaintiff claims that he had a hemorrhage in his eye, as well as internal bleeding, both of which were discovered after he was transferred from Wende to Attica Correctional Facility ("Attica") (*Id.* 124: 2-5, March 19, 2008.) Plaintiff maintains that Sedar should have sent him out for X-rays immediately. (*Id.* 123: 24-25, March 19, 2008.) Plaintiff's medical records show that two nurses attended to him on May 17, 2003: Sedar treated him at 9:35 a.m. and 1:00 p.m., while Nurse Richard McKirchy ("McKirchy") saw him in his cell at 10:15 a.m., 11:25 a.m., and 12:15 p.m. (Sedar Aff. ¶¶ 5, 6.) Sedar's first report in Plaintiff's Ambulatory

2

Health Record on May 17, 2003 states:

> 9:35 a.m.(AHR), c/o (complaint of) head & neck pain, A.O. [alert and oriented] x 3, resp [respiration] reg [regular] and easy, inj (injury) report done, shu adm (admission) done, able to std [stand], sit and amb [ambulate] without difficulty, PEARLA [pupils equal and react to light and accommodation], able to move head, shoulder and neck without facial grimacing. Able to amb and navigate through corridor avoiding obstacles , tiny scratch noted on r (right) upper eyelid, cleaned, c (with) nacl [normal saline], bleeding abated, inst (instructed) to wash face, with soap and H2O, fu (follow up) with c (with) sc (sick call) prn (as needed). [sic.]

(*Id.* ¶ 5 a.) Similarly, Sedar's second report states:

> 1:00 p.m. at his S.H.U. cell: Pt exam, pt is A O x 3, rep (respiration) reg (regulat) and easy. Just finished with urine test for security. Held bag of his OTC (over-the-counter) meds (medicines) next to cell. Pt able to focus on meds with good eye acuity, pulse 88 strong and reg (regular), refused to have BP [blood pressure] take. Pt able to std (stand), amb (ambulate) and sit without facial grimace, answered questions coherently. [sic.]

(*Id.* ¶ 5 b.) As mentioned above, the medical record indicates that in between Sedar's 9:35 a.m. and 1:00 p.m. examinations of Plaintiff, McKirchy checked on Plaintiff three times, at 10:15 a.m., 11:25 a.m., and 12:15 p.m. (Sedar Aff. ¶¶ 5, 6.). On one of those occasions, McKirchy administered smelling salts to Plaintiff, who appeared to be unconscious on the floor of his cell. (*Id.* ¶ 6 b.)

On May 27, 2003 Plaintiff filed an inmate grievance concerning the alleged assault. Specifically, he stated that Hatfield grabbed him after he stumbled, and that Gunn along with unnamed officers assaulted him.[1]

On May 24, 2006, Plaintiff commenced this action. On May 15, 2008, after discovery, Braun, Hatfield, Turnbull, and Sedar filed the subject motion for summary

---

[1] Plaintiff also filed an inmate grievance against Sedar, but Plaintiff's failure to exhaust his administrative remedies against Sedar is not an issue in this case.

3

judgment. (Doc. # 39.) A notice meeting the standards of *Irby* and Local Rule 56.2's for *pro se* litigants was sent to Plaintiff on the same day. *Id.*; *Irby v. New York Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001). On May 20, 2008 the Court ordered Plaintiff to file and serve any responding papers before June 30, 2008. (Doc. # 47.) Plaintiff failed to do so. More than six months later, On January 9, 2009, Plaintiff filed a motion to extend the scheduling order deadlines. However on January 16, 2009, since Plaintiff did not to establish good cause for having failed to comply with the Court Order, the Court denied his request.[2] (Decision and Order, Doc. # 50.)

## ANALYSIS

### Summary Judgment

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 James Wm. Moore, et al., *Moore's Federal Practice* § 56.11[1][a] (3d ed. 2008). That is, the burden is on the moving party to demonstrate that

---

[2] Plaintiff claimed he was not able to comply because of appendicitis, however, his medical records indicated that he received his appendectomy a month *after* the filing deadline.

the evidence creates no genuine issue of material fact. *See Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir.2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 898 (3d Cir.1987) (*en banc*). Where the nonmoving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the movant's burden has been met, the burden shifts to the nonmoving party, which in its response must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir.1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the nonmoving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the nonmoving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir.2001), *rev'd on other grounds*; *Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1 (2003). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991) (*citing Matsushita Elec. Indus. Co., Ltd.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804

F.2d 9 (2d Cir.1986). Since Plaintiff is proceeding *pro se*, the Court is required to construe

his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v.*

*Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

## Civil Rights Claims: 42 U.S.C. § 1983

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles applicable

to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a)
> that the defendant is a "person" acting "under the color of state law," and (b)
> that the defendant caused the plaintiff to be deprived of a federal right. See,
> *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).
> Additionally, "[i]n this Circuit personal involvement of defendants in alleged
> constitutional deprivations is a prerequisite to an award of damages under
> § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
> ***
> An individual cannot be held liable for damages under § 1983 "merely
> because he held a high position of authority," but can be held liable if he was
> personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d
> 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that:
> (1) the defendant participated directly in the alleged constitutional violation,
> (2) the defendant, after being informed of the violation through a report or
> appeal, failed to remedy the wrong, (3) the defendant created a policy or
> custom under which unconstitutional practices occurred, or allowed the
> continuance of such a policy or custom, (4) the defendant was grossly
> negligent in supervising subordinates who committed the wrongful acts, or
> (5) the defendant exhibited deliberate indifference ... by failing to act on
> information indicating that unconstitutional acts were occurring. *See Colon*
> *v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).

## Exhaustion of Administrative Remedies

Braun, Hatfield, and Turnbull claim that Plaintiff failed to fully exhaust his administrative remedies.[3] Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Such exhaustion of administrative remedies is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Id.* The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532. Generally, in order to satisfy § 1997e(a), a plaintiff must use DOCS's inmate grievance procedures:

> The New York State Department of Correctional Services employs a three-step Inmate Grievance Program ["IGP"] that requires an inmate to: (1) file a grievance with the Inmate Grievance Review Committee as set forth in 7 N.Y.C.R.R. § 701.7(a)(1); (2) appeal to the superintendent within four working days of receiving the Inmate Grievance Resolution Committee's adverse written response as set forth in 7 N.Y.C.R.R. § 701.7(b)(1); and appeal to the Central Office Review Committee in Albany, New York within four working days of receipt of the superintendent's adverse written response, as set forth in 7 N.Y.C.R.R. § 701.7(c)(1). Abney v. McGinnis, 380 F.3d 663 (2d Cir.2004).

*Fuller v. Hohensee*, No. 03-CV-0514, 2008 WL 4826261, 7 (W.D.N.Y. Nov. 5, 2008).

"[F]ailure to exhaust is an affirmative defense under the PLRA, and ... inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones* 549

---

[3] Unlike the other three defendants, Sedar did not file for summary judgment for Plaintiff's failure to exhaust administrative remedies.

U.S. at 216; *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir.1999) ("[A] defendant in a prisoner § 1983 suit may also assert as an affirmative defense the Plaintiff's failure to comply with the PLRA's requirements."). IGP procedures do not contain an express identification requirement, and so a New York state prisoner is not required to specifically name all responsible parties in a grievance in order to exhaust administrative remedies. *Espinal v. Goord*, 558 F.3d 119, 126 (2d Cir. 2009) (citing *Jones v. Bock*, 549 U.S. 119, 218 (2007)).

Plaintiff filed an inmate grievance against Hatfield. Defendants raise two arguments against this grievance: first, Plaintiff named neither Braun nor Turnbull in his grievance (Def.'s memo 7); second, in his inmate grievance, Plaintiff only alleged that Hatfield "grabbed" him, as opposed to punching or kicking him. (*Id.*)

First, the fact that Plaintiff mentioned neither Braun nor Turnbull in his inmate grievance does not mean he failed to exhaust his administrative remedies, since, as indicated, New York's IGP does not require express identification. *Espinal*, 558 F.3d at 126. Failure to exhaust administrative remedies is an affirmative defense for which the defendants have the burden of proof. *Jones*, 549 U.S. at 216. Defendants have not shown that they are entitled to judgment with regard to exhaustion of administrative remedies. Second, the Court disagrees with Defendants' argument that "grabbing" does not amount to a use of force. Therefore, Defendants' summary judgment motion must be denied to the extent that it is based on 42 U.S.C. § 1997(e)(a).

**Eighth Amendment: Excessive Force**

8

Plaintiff alleges that Braun, Hatfield, and Turnbull violated his Eighth Amendment right to be free from cruel and unusual punishment by assaulting him. The legal principles applicable to such a claim are similarly well-settled:

> The test of whether use of force in prison constitutes excessive force contrary to the Eighth Amendment is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. The absence of serious injury is relevant to the Eighth Amendment inquiry, but does not end it.
>
> To determine whether defendants acted maliciously or wantonly, a court must examine several factors including: the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.

*Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir.2003) (citations and internal quotation marks omitted).

Moreover:

> A corrections worker who, while not participating in an assault upon an inmate, is present while it occurs may nonetheless bear responsibility for any resulting constitutional deprivation. It is well-established that a law enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his presence by other officers. *See Mowry v. Noone*, No. 02-CV-6257 Fe, 2004 WL 2202645, at *4 (W.D.N.Y. Sept.30, 2004); *see also Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir.2001) ("Failure to intercede results in [section 1983] liability where an officer observes excessive force being used or has reason to know that it will be.") (citations omitted). In order to establish liability on the part of a defendant under this theory, a plaintiff must prove the use of excessive force by someone other than the individual, and that the defendant under consideration 1) possessed actual knowledge of the use by another corrections officer of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *See Id.; see also Espada v. Schneider*, 522 F. Supp.2d 544, 555 (S.D.N.Y.2007). Mere inattention or inadvertence, it should be noted, does not rise to a level of deliberate indifference sufficient to support liability for failure to intervene. *See, e.g.,*

> *Schultz v. Amick*, 955 F. Supp. 1087, 1096 (N.D.Iowa 1997) (noting that
> "liability in a § 1983 'excessive force' action cannot be founded on mere
> negligence") (*citing, inter alia, Daniels v. Williams*, 474 U.S. 327, 335-36
> (1986)).

*Cicio v. Graham, et al.*, No. 08-CV-534, 2009 WL 537534, at *5 (N.D.N.Y. March 3, 2009)

Plaintiff alleges in his Complaint that Braun, Hatfield, and Turnbull punched, kicked, and hit him with their batons. (Compl. ¶ 28.) Plaintiff also alleges in his Complaint that after he was restrained and placed in handcuffs and leg-irons that Hatfield, and two other Corrections Officers punched and kicked him. (Compl. ¶ 31, 46.) Plaintiff's deposition testimony, though, contradicts his Complaint. At his deposition, Plaintiff testified that Braun, Hatfield, and Turnbull were merely present, and did not play an active role in the incident. (Green Dep. 89: 5-25, 90: 2-11, March 19, 2008.) Hatfield, in an affidavit filed is support of the summary judgment motion, states only that he grabbed Plaintiff's arm while subduing him (Hatfield Aff. 8), and Braun and Turnbull, in their affidavits, deny using any force against the Plaintiff at all. (Braun Aff. 7; Turnbull Aff. 8, 9.) Since Plaintiff is proceeding *pro se*, the court must construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos*, 14 F.3d at 790. However, the party opposing summary judgment "may not rely merely on allegations ... in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Plaintiff has raised no genuine issue of material fact as to whether Braun, Hatfield, and Turnbull actually assaulted him,

Plaintiff also contends that Braun, Hatfield, and Turnbull were present at the time of Plaintiff's altercation with corrections officers, and failed to intervene to protect him from being assaulted. (Green Dep. 88: 5-25; 89: 2-18.) In support of their summary judgment

10

motion, Braun, Hatfield, and Turnbull all claim that they did not observe anyone kick, punch, or otherwise strike Plaintiff (Braun Aff. 8; Hatfield Aff. 9; Turnbull Aff. 10.) Braun, Hatfield, and Turnbull also claim that they would not have had "a realistic opportunity to prevent the harm from what plaintiff [sic.] claims was a single blow delivered by Gunn." (Defs. Mem. at 6.) However, construing all facts liberally in favor of the non-moving party, the Court finds that there is a genuine issue of material fact as to whether Braun, Hatfield, and Turnbull failed to intervene and protect Plaintiff from being assaulted by other officers. Accordingly, summary judgment on Plaintiff's excessive force claim is denied.

## Eighth Amendment: Denial of Medical Assistance

Plaintiff alleges that Sedar violated his Eighth Amendment rights by denying him medical treatment, and the legal standard for such claims is clear:

> In order to establish cruel and unusual punishment under the Eighth Amendment, a prisoner's claim arising out of inadequate medical care must prove that there was deliberate indifference to his serious medical needs. This standard incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind.
>
> Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation. [T]he Supreme Court [has] explained that the Eighth Amendment's prohibition on cruel and unusual punishments encompasses the deliberate failure to treat a prisoner's serious illness or injury resulting in the infliction of unnecessary pain and suffering. Because society does not expect that prisoners will have unqualified access to health care, a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care. Similarly, a prisoner must demonstrate more than an inadvertent failure to provide adequate medical care by prison

11

officials to successfully establish Eighth Amendment liability. An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety, a state of mind equivalent to the familiar standard of 'recklessness' as used in criminal law.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir.2003) (citations and internal quotations omitted). A plaintiff must demonstrate that the denial of medical assistance fell below the standards of social decency, or constituted an unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (citations omitted). Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."). Similarly, negligence constituting medical malpractice, without more, will not establish a constitutional claim. *Id.* (citation omitted).

Here, Plaintiff maintains that the examination Sedar performed was not sufficiently thorough, and that Sedar downplayed Plaintiff's injuries in the medical report. (Compl. ¶ 48; Green Dep. 124:12-13, March 19, 2008.) Plaintiff further contends that he suffered from internal bleeding and a hemorrhage in his eye, which Sedar failed to diagnose, and that these injuries were not discovered until after he was transferred to Attica. (Green Dep. 124:2-5, March 19, 2008.)

Plaintiff, however, admits that Sedar attended to Plaintiff's injuries and performed a medical examination. Although Plaintiff contends that he was bleeding internally, he has not shown how Sedar could have perceived such injury during the two examinations he performed. Assuming *arguendo*, that it was possible for Sedar to have diagnosed internal

bleeding and he failed to do so, Plaintiff has nonetheless failed to establish that such negligence constituted a knowing disregard of an excessive risk to Plaintiff's health or safety. Plaintiff further maintains that Sedar should have X-rayed his head automatically because of the nature of the injury. (Green Dep. 124:20-22, March 19, 2008.) This, though, only constitutes a difference of opinion over treatment, and so does not rise to the standard of an Eighth Amendment violation. Finally, Plaintiff claims that, although he was unconscious on the floor of his cell, he was only given smelling salts, and was not given proper care. (*Id.* 123: 17-20.) However, as indicated above, Plaintiff's medical records show that it was McKirchy, and not Sedar, who provided smelling salts, and McKirchy is not a party to this suit. (Sedar Aff. ¶ 6.)

Even when the facts are construed liberally with all inferences drawn in Plaintiff's favor, Plaintiff has not raised a triable issue of fact as to deliberate indifference by Sedar. Consequently, Sedar is entitled to Summary Judgment.

## CONCLUSION

Defendant's application (Docket # 39) is granted in part and denied in part as follows: Summary judgment is denied as to Braun, Hatfield, and Turnbull, and is granted as to Sedar.

IT IS SO ORDERED.

Dated:  June _22_, 2009
        Rochester, New York

                ENTER:

                _Charles Siragusa_
                Charles J. Siragusa
                United States District Judge

14